## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**BILLY JONES**                                                    **CIVIL ACTION**

**VERSUS**

**WEATHERFORD INTERNATIONAL,**
**LTD, LAMAR OIL & GAS, INC.,**                    **NO. 07-450-C-M2**
**ABC INSURANCE COMPANY AND**
**XYZ INSURANCE COMPANY**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 10 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report.  The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 10 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in chambers in Baton Rouge, Louisiana, February 5, 2009.

_____

**MAGISTRATE JUDGE CHRISTINE NOLAND**

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**BILLY JONES**                                                                    **CIVIL ACTION**

**VERSUS**

**WEATHERFORD INTERNATIONAL,**
**LTD, LAMAR OIL & GAS, INC.,**                                    **NO. 07-450-C-M2**
**ABC INSURANCE COMPANY AND**
**XYZ INSURANCE COMPANY**

### MAGISTRATE JUDGE'S REPORT

This matter is before the Court on the Motion for Summary Judgment (R. Doc. 41) filed by defendants, Lamar Oil & Gas, Inc. and Lexington Insurance Company (collectively "Lamar"). Plaintiff, Billy Jones ("Jones"), has filed an opposition (R. Doc. 42) to this motion. Both parties have also filed reply memoranda. (R. Doc. 45 and 48).

### FACTS & PROCEDURAL BACKGROUND

This suit relates to an oilfield accident that occurred on June 27, 2006. On that date, Jones was employed by Moncla Well Services ("Moncla") to assist in a workover project at the Gianelloni Well #4 in East Baton Rouge Parish, Louisiana, which was owned and operated by Lamar. Prior to the accident, Lamar contracted with Success Energy, L.L.C. ("Success") to provide consulting and engineering services, well procedures, and AFEs for its North Burtville Field Project and its East Perkins Field Project, including the Gianelloni Well #4 where Jones was working at the time of his accident. Success assigned one of its owner/employees, Jim Docherty ("Docherty"), to work as the "company man" for Lamar on the Gianelloni Well #4 workover project. Lamar also hired Jones' employer, Moncla, to provide a land-based drilling rig and perform drilling operations and completion work for the project. Jones was working as a floorhand for Moncla at the well-site when his accident

occurred.  Finally, Success, through Docherty, contracted with Weatherford U.S., L.P. ("Weatherford"), to provide certain equipment, including power tongs, that were needed for the workover and drilling operations.

During operations on June 27, 2006, Jones was injured while operating certain power tongs provided by Weatherford.  Specifically, Jones' injury occurred when a chain suspending Weatherford's tongs from a derrick broke and allowed the tongs' hydraulic lift cylinder to fall and smash Jones' right hand.  Jones contends that, as a result of the accident, he has had to undergo surgery on his hand, including the implantation of a plate, and that he also suffers Reflex Sympathetic Dystrophy ("RSD"), Complex Regional Pain Syndrome, and severe depression.  Jones has not been released to work since his accident.

 Following the accident, Jones filed suit against Lamar, Weatherford, and their liability insurers, claiming that Weatherford's tongs were malfunctioning at the time of the accident, causing excessive stress to be placed on the chain that broke and allowed the hydraulic lift assembly to fall.  Jones also claims Weatherford's technician, who was called out to the rig before the accident to service and repair the tongs, was negligent in failing to properly do so.  Jones further asserts that Lamar was negligent in failing to ensure the tongs were properly serviced and repaired and to ensure the drill crew was provided proper equipment to complete operations.

On October 6, 2008, Lamar filed the present motion for summary judgment, seeking dismissal of the claims against it on the ground (1) that it had no direct involvement in the operations of the well-site in question; (2) that it was not responsible for the actions of its independent contractors, Success, Moncla and Weatherford; and (3) that it had no direct

or "borrowed employees" working at the well-site.

## LAW & ANALYSIS

**I.      Summary judgment standard:**

Summary judgment is appropriate where the pleadings, discovery products, and affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  Fed. Rule Civ. Proc. 56(c).  A "genuine issue" exists when a reasonable jury could resolve the disputed fact(s) in favor of the non-movant, and a "material" fact is one that might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).[1]  Only if the nonmoving party sets forth specific facts and evidence supporting the allegations essential to his/her claim will a genuine issue of material fact be found to exist.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).[2]

**II.      Applicable substantive law:**

It is undisputed that this matter was filed pursuant to the Court's diversity jurisdiction,

---

[1] In reviewing a motion for summary judgment, a court " . . .must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh evidence."  *Reeves v. Sanderson Plumbing, Inc.*, 530 U.S. 133, 120 S. Ct. 2097, 2110, 147 L.Ed.2d 105 (2000).

[2] The nonmoving party may not rely upon pleadings, conclusory allegations, unsubstantiated assertions or arguments alone, but instead must come forward with evidence based on personal knowledge that demonstrates the existence of a material fact.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  If the record taken as a whole does not lead a rational trier of fact to find for the non-moving party, no genuine issue of material fact exists, and the mover is entitled to summary judgment as a matter of law.  *Id.*

28 U.S.C. §1332, and that, under the *Erie* doctrine[3] and Louisiana's choice of law rules,[4] Louisiana's substantive law applies herein. Under Louisiana law, a principal is typically not liable for the negligence of its independent contractors. *Roberts v. Cardinal Servs., Inc.* 266 F.3d 368, 380 (5th Cir. 2001). The Fifth Circuit Court of Appeals has recognized two (2) exceptions to that rule: (1) when the principal maintains "operational control" over the activity in question; and (2) even in the absence of such control, when the activity is ultrahazardous. *Id.* Moreover, the principal always remains liable for its own negligence. *Graham v. Amoco Oil Co.,* 21 F.3d 643, 645 (5th Cir. 1994)*; Crane v. Exxon Corp. USA*, 613 So.2d 214, 221 (La.Ct.App. 1992).

Jones' allegations against Lamar relate to Lamar's hiring and monitoring of Weatherford, which provided the power tongs that allegedly resulted in his injury. It is undisputed that Success, through Docherty, ordered all equipment from third parties relative to the job in question, including the power tongs at issue, and hired all vendors and contractors who performed work on the site. Thus, in determining whether any liability can be imposed upon Lamar herein, the Court must first determine whether Success was an independent contractor relative to Lamar on the job at issue. If it is determined that Success was an independent contractor, the Court must then examine whether either of the exceptions to Lamar's immunity as a principal exist in this case, such that liability could be imposed upon it for its independent contractor's alleged negligence. There is no allegation or evidence that the activity in question in this case was ultrahazardous;

---

[3] *See, Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed.1188 (1938).

[4] *See,* La. C.C. arts. 3515, 3542, and 3543.

4

accordingly, the only exception that could potentially apply herein is the "operational control" exception.  Finally, if it is determined that Success was an independent contractor and that the "operational control" exception is inapplicable herein, the Court must examine whether Lamar is liable for any negligence of its own in this case.[5]

**III.   Was Success an independent contractor relative to Lamar for the job in question?**

The distinction between employment and independent contractor relationships was examined by the Louisiana Supreme Court in *Hickman v. Southern Pacific Transport Co.*, 262 La. 102, 117, 262 So.2d 385 (La. 1972).  It was held that the relationship of a principal and an independent contractor exists when the following conditions are met:  (1) there is a valid contract between the parties; (2) the work being done is of an independent nature such that the contractor may employ non-exclusive means to accomplish it; (3) the contract calls for specific work to be done according to the contractor's methods without being subject to the control and direction of the principal except as to the result of the services; (4) there is a specific price for the work; and (5) the project's duration is for a "specific time" and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach.  *Id.*

Examining the "Letter of Engagement for Consulting Services" executed by Lamar and Success on May 15, 2006, the Court cannot definitively find that all of the above

_____

[5] Although Lamar also asserted an argument in its summary judgment motion that Docherty is not a "borrowed employee" for whose actions it could be held responsible, Jones presented no argument to the contrary in its opposition, and the Court finds that it is not necessary to address that argument in order to render a recommendation herein.

criteria are satisfied.[6]   While a valid contract exists between Lamar and Success, the contract specifically indicates that Success' consulting engineering services are to be performed "at Lamar's direction" and that all procedures and recommendations made by Success are to be "reviewed and accepted by Lamar."   Thus, it appears that Lamar controls more than merely the result of Success' services and actually exercises a degree of control over every procedure and recommendation made by Success relative to the

---

[6] The "Letter of Engagement for Consulting Services" between Lamar and Success provides the following:

Success Energy LLC ("Success") and Lamar Oil & Gas Inc ("Lamar") agree to the following terms of a consulting arrangement for Lamar's North Burtville Field Project in East Baton Rouge Parish and the East Perkins Field Project in Beauregard Parish ("Projects").

- Lamar is the operator of three wells in the North Burville Field in East Baton Rouge Parish and future wells in the East Perkins Field in Beauregard Parish.

- Success will provide consulting engineering services, well procedures, and AFEs for the wells at a consulting rate of $100 per hour or an alternative manually agreed arrangement.

- Success will work on the project at Lamar's direction. Lamar recognizes Success does not have professional engineering and liability insurance due to the exorbitant cost of insurance premiums.  All procedures and recommendations made by Success will be reviewed and accepted by Lamar.  Lamar agrees to indemnify Success against all third party claims on the project once Lamar accepts the well plan and AFEs provided by Success.  When Success works at the well site for Lamar's benefit, then Lamar shall name Success as an additional insured on Lamar's insurance policies.

*See,* Exhibit A to Lamar's motion.

projects identified in the contract.  Moreover, the "Letter of Engagement" does not set forth a "specific price" for the consulting work.   Payment at an hourly rate is not typically considered a "specific price" that would result in independent contractor status.  *Adams v. Greenhill Petroleum Corp.*, 631 So.2d 1231 (La. App. 5 Cir. 1994)(The "specific price" condition of *Hickman* was not met where there was no specific price for the overall undertaking set forth in the contract; instead, payment was to be made on an hourly basis for a nonspecific amount of work).[7]  Furthermore, the hourly rate designated in the "Letter

_____

[7] *See also, Cliburn v. Police Jury Ass'n of Louisiana, Inc.*, 1999-2191 (La. App. 1 Cir. 11/3/00), 770 So.2d 899 (There was no specific price for the overall undertaking since the contractor's contract of employment provided for an hourly rate of $35.00 and had no specific term); *Louisiana Workers' Compensation Corp. v. Genie Industries*, 2000-2034 (La. App. 4 Cir. 2001), 801 So.2d 1161 (Typically, a payment of hourly wages is more indicative of employee status; whereas, payment on a per job basis is indicative of independent contractor status); *Rush v. Employers Nat. Ins. Co.*, 598 So.2d 603 (La. App. 4 Cir. 1992)(Payment of an hourly rate is a strong indicator of employee status, rather than independent contractor status); *Glover v. Diving Services Intern., Inc.*, 577 So.2d 1103 (La. App. 1 Cir. 1991)(same); *Stovall v. Shell Oil Co.*, 577 So.2d 732 (La. App. 1 Cir. 1991); *Campbell v. Keystone Aerial Surverys, Inc.*, 138 F.3d 996 (5th Cir. 1998)(Jury verdict finding that decedent was an independent contractor of company for which he was conducting aerial surveys when he was killed in an airplane accident was not plain error, given evidence that company had paid the decedent with lump-sum payments for the first two months of work, contrary to its customary method of paying employees on an hourly basis); *Hardy v. Ducote*, 246 F.Supp.2d 509 (W.D.La. 2003); *Fuller v. U.S. Aircraft Ins. Group*, 530 So.2d 1282 (La. App. 2 Cir. 1988)(Payment on a time basis is a strong indication of the status of employment, whereas payment on a completed project basis is indicative of independent contractor status).

Although Lamar has cited two cases in its reply memorandum, which purportedly stand for the proposition that payment at an hourly rate can constitute a "specific price" in an independent contractor agreement, the cases it cites do not necessarily stand for that proposition.  In *Bellard v. Castille*, 1999-1161 (La. App. 3 Cir. 1999), 759 So.2d 789, a painter was held to be an independent contractor; however, the court noted that the painter was paid a prearranged fee "by the job" and that the principal merely controlled the result of the job (in that it told him the address of the apartment to be painted and what color it was to be painted) and not the means by which the painter was to accomplish the result.  There is no indication in that case that the painter was

of Engagement," even assuming it constitutes a "specific price," is only an alternative form of payment and is therefore not required by the contract.  Since the other payment option in the contract (*i.e.*, a "manually agreed arrangement") is too vague to be considered a "specific price," the price element of the *Hickman* test is also unsatisfied for that reason.

Additionally, even assuming the reference to the North Burtville Field Project and the East Perkins Field Project in Beauregard Parish in the "Letter of Engagement" denotes a "specific duration" during which Success was to provide consulting engineering services, *i.e.*, until those projects were completed (as Lamar suggests in its reply memorandum),[8] the Court nevertheless finds that the "Letter of Engagement" lacks a provision precluding either party to the contract from terminating or discontinuing the contract at will without corresponding liability for breaching the agreement.  *See, Adams*, at 1235 (holding that a cancellation provision is one of many factors to be considered in determining independent contractor status and that a provision stating that cancellation of a contract "may be effected at the option of either party by giving the other party thirty (30) days notice in writing to that effect" and that "such cancellation shall not relieve either party of its

_____

paid at an hourly rate and that an hourly rate is accepted as a "specific price" for purposes of the independent contractor determination.  In the other case cited by Jones, *Howlett v. Halpern*, 559 So.2d 21 (La. App.4th Cir. 1990), the price for the project was in part a lump sum and in part an hourly rate, and the court concluded that the "specific price" requirement was satisfied.  Since at least a portion of the price was a certain lump sum in *Howlett*, the Court cannot conclude, based upon that case, that an hourly rate is a sufficiently specific price to satisfy the price element of the *Hickman* test.

[8] The Court only assumes that criteria to be satisfied because it is uncertain whether the mere reference to designated projects within the "Letter of Engagement" is sufficient to establish a "specific duration."  To be specific, the contract should have precisely indicated that the duration of the contract was to last until the projects were completed.

obligation arising from or incident to the work performed hereunder prior to the time such cancellation becomes effective" may not even be sufficient to satisfy the final requirement of the *Hickman* test); *Smith v. Hughes Wood Products, Inc.*, 544 So.2d 687 (La. App. 3 Cir. 1989)(The right to terminate the relationship without cause, where no term of employment is prescribed, is characteristic of the master-servant or employer-employee relationship and antagonistic to the independent contractor relationship).

Lastly, the fact that, in the "Letter of Engagement," Lamar agreed to provide liability insurance coverage to Success in connection with the project suggests that an independent contractor relationship may not exist.  *See, Buxton v. Amoco Oil Co.*, 676 F.Supp. 722 (W.D.La. 1987)(Emphasis added)(finding independent contractor status existed where the contract in question specifically provided that the contractor was to supply the labor, materials, and equipment necessary to perform the project; the contract expressly provided that the contractor was to be an independent contractor and not an employee of the principal; the contractor *was required to carry its own workmen's compensation and general liability insurance*; nowhere in the contract was there any reservation of control to the principal over the means used to perform the job; and to the contrary, the evidence indicated that the contractor actually exercised operational control over its work and the role of the principal's representative was limited solely to inspecting the quality of the contractor's work to ensure that it met the principal's specifications).[9]

---

[9] *See also, Course v. Fox Wolff Const.*, 08-58 (La. App. 5 Cir. 2008), 987 So.2d 277 (where the court found significant, in the independent contractor determination, that the principal had not provided any benefits to the independent contractor); *Guidry v. Freeman*, 555 So.2d 588 (La. App. 1 Cir. 1989)(taking into consideration that the relationship between the parties was terminable at will and that the principal had provided liability insurance and worker's compensation insurance for the contractor, in

9

Unlike in *Buxton*, the "Letter of Engagement" at issue in the present case does not expressly provide that Success was to be an independent contractor as to Lamar relative to the projects in question.  Furthermore, there is a reservation of control to Lamar over the means used to perform the job, in that the contract provides that the project is to be performed "at Lamar's direction" and that Lamar must "review and approve" all procedures and recommendations made by Success.[10]  While it is true that Docherty (the part-owner of and employee of Success who served as Lamar's "company man" on the projects in question) was given discretion by Lamar to direct the work to be performed by the drilling contractor, to order equipment from third parties to be used at the jobsite and examine that equipment when it arrived at the site to ensure that it was correct in type and quantity, to make decisions as to what vendors/contractors were needed at the site, and to contact the vendors when there were any flaws or defects in the equipment delivered to the jobsite, he took such actions on behalf of Lamar as its "company man," and all such actions had to comply with Lamar's "well prognosis or plan" and had to be reviewed and approved by

---

finding that an employer-employee relationship existed).

[10] What this "review and approval" process actually entailed and the degree of involvement that such contractual provision allowed Lamar to exercise over the project in question are issues of fact that preclude summary judgment as to Success' alleged independent contractor status.  Another issue that courts have recognized as significant in determining whether a worker is an employee versus an independent contractor is whether the principal withheld taxes from payments made to the contractor, which would be suggestive of an employer-employee relationship.  *Honeycutt v. Deutschmann*, 07-211 (La. App. 5 Cir. 2008), 976 So.2d 753; *Mouton v. We Care Homes, Inc.*, 2005-215 (La. App. 3 Cir. 2005), 915 So.2d 971; *Elmore v. Kelly*, 39,800 (La. App. 2 Cir. 2005), 909 So.2d 36; *Hughes v. Goodreau*, 2001-2107 (La. App. 1 Cir. 2002), 836 So.2d 649.  Because neither party has presented any evidence in that regard in the present case, that remains an unresolved issue that could assist in the determination of whether Success was an employee or independent contractor of Lamar.

Lamar.  *See*, Docherty deposition, Exhibit C to Lamar's motion, pp. 37-38, 60-61, 93.[11]
Even if Docherty was not "micromanaged" by Lamar on the jobsite on a daily or hourly
basis and even though it is undisputed that no employee of Lamar ever worked at or visited
the jobsite during the time in question, Docherty was still required to report to Lamar on a
daily basis via drilling reports concerning the activities of the previous twenty-four (24)
hours and an estimated cost breakdown and was in a line of communication with Lamar
concerning reports from contractors at the wellsite, incident reports, and service
tickets/receipts.  *Id.*, p. 22, 25-26, 60-61.  Considering Lamar's involvement in the progress
and decisions relating to the project and the fact that all of the elements of the *Hickman* test
are not satisfied in this case, the Court cannot find, based upon the evidence before it at
this time, that it is undisputed that Success was an independent contractor of Lamar.[12]

_____

[11] During his deposition, Docherty even referred to the owner of Lamar, David
Pilgrim, as his supervisor or boss, suggesting an employer-employee relationship
between Lamar and Success rather than a principal-independent contractor
relationship.  *Id.*, p. 22.  Such a relationship is further suggested by the fact that
Docherty had the authority to bind Lamar in ordering equipment and services for the job.
*See also, Saucier v. Bunkie Wood Products Co.*, 1999-1072 (La. App. 3 Cir. 12/15/99),
759 So.2d 794 (Woodcutter was considered an employee of a logging company instead
of an independent contractor, where the logging company financed some of the
woodcutter's equipment and deducted insurance premiums for woodcutter payable to
company's insurance carrier).

[12] It has been repeatedly recognized by Louisiana courts that the "operational
control" determination in the independent contractor analysis "depends in great
measure upon whether and to what degree the right to control the work has been
contractually reserved by the principal.  The supervision and control which is *actually*
exercised by the principal is less significant."  *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d
548 (5th Cir. 1987); *Hickman,* 262 So.2d at 391 (It is not the supervision or control that is
actually exercised by the employer that is significant, but whether, from the nature of the
contract or relationship, the right to do so exists).  Thus, the contractual provisions in the
present case providing that Success is to perform its services "at Lamar's direction" and
that all procedures and recommendations of Success must be "reviewed and accepted"
by Lamar carry more weight than the actual supervision and control exercised by Lamar

*Hinton v. Western Cas. and Sur. Co.*, 435 So.2d 568 (La. App. 3 Cir. 1983)("The precise question before us at this stage of the proceeding . . . is not the ultimate determination of whether or not the right of control existed, and consequently whether this was an employer-employee relationship and not an independent contractor relationship, but rather whether there is a genuine issue of fact unresolved regarding the nature of the relationship"). Accordingly, Lamar's motion for summary judgment should be denied as to the issues of whether Success was an independent contractor relative to the project at issue and whether Lamar retained sufficient "operational control" over the project, such that its immunity from liability for the alleged negligence of Success would be destroyed.

## IV. Is there sufficient proof of Lamar's independent negligence to preclude summary judgment?

In his final argument in his opposition to Lamar's summary judgment motion, Jones argues that, in addition to Lamar being liable as the employer of Success and because it exercised "operational control" over the Gianelloni Well #4 workover project, Lamar is also liable because it was independently negligent in failing to have any employees on site at the well to supervise operations. The Fifth Circuit Court of Appeals has held that an

---

over the project, when determining whether a principal-independent contractor relationship exists.

As Jones explains in his opposition to this motion, if Lamar had intended to give Success full and complete control over the operations at the North Burtville Field Project and the East Perkins Field Project (and, thus, potential liability related thereto), it certainly could have provided for same in the "Letter of Engagement." Instead, Lamar actually retained authority over the overall direction of the project as well as regarding every procedure and recommendation Success made relating to the project. Lamar further agreed to provide insurance for and indemnify Success relative to all third party claims arising from the projects. As noted above, such contractual provisions are more suggestive of an employer-employee relationship than a principal-independent contractor relationship.

employer (such as Lamar) generally has no duty to ensure that an independent contractor performs its obligations in a safe manner. *Ellison v. Conoco, Inc.*, 950 F.2d 1196 (5th Cir. 1992). However, an employer who retains control over the "operative details" of the independent contractor's work has a duty to discover or remedy hazards created by the contractor. *Id.*, at 1207.[13]   Considering that Lamar's "operational control" over the Gianelloni Well #4 project and Success' status as an independent contractor continue to be genuinely disputed issues of fact in this matter, the Court cannot find that Lamar lacked a duty to ensure that Success properly and safely performed its obligations on the project.

Moreover, Jones has presented, with his sur-reply, the expert report of Gregg S. Perkin (an engineer with specialized knowledge in the areas of design, implementation, personnel, materials, and equipment necessary in the exploration and production of offshore and onshore drilling operations), which indicates that Lamar was independently negligent in connection with the project in question in failing to fulfil its "duty and responsibility to coordinate the activities of [its] subcontractors such that they could all work safely together, as well as provide a safe place to work which was free from any and all recognized hazards." *See*, Affidavit and Expert Report of Gregg S. Perkin, p. 13. Perkin further opines in his report that Lamar, through Docherty, "should have inspected what he expected from Weatherford; a properly operating HPU and Tong Assembly *including a tong line capable of safely supporting the Tong Assembly above Rig 18's rig floor.*" *Id.* Lamar

---

[13] The reasoning behind the control exception to the general rule of non-liablity is based upon a recognition that "one has an affirmative responsibility toward others when one has taken an active part in directing the manner in which those others perform their tasks or when one creates or is generally responsible for a dangerous situation that causes harm." *Id.*

13

has not presented any expert evidence refuting Perkin's report and indicating that, if it owed a duty to ensure that Success and/or other subcontractors on the job performed their jobs in a safe manner, it properly fulfilled that duty.  Accordingly, the Court does not find that Lamar is entitled to summary judgment on the issue of its independent negligence for the accident in question.

## **RECOMMENDATION**

For the above reasons, it is recommended that the Motion for Summary Judgment (R. Doc. 41) filed by defendants, Lamar Oil & Gas, Inc. and Lexington Gas Company, should be **DENIED**.

Signed in chambers in Baton Rouge, Louisiana, February 5, 2009.

_____

**MAGISTRATE JUDGE CHRISTINE NOLAND**